Mr. McGovern. Morning, Your Honor. May it please the court. My name is Glenn McGovern. It's my privilege to represent Mr Phillips, who is a driver who is accused of theft, was arrested and the charges were dropped. The reason being, the case is before you today because the lower court abuses discretion by giving defendants motion for summary judgment after it determined all the facts weighed only in favor of the mover. It totally disregarded all our affidavits and the other facts in this somewhat complicated technical situation dealing with their trace packages electronically. The court made credibility determinations that should have been preserved for the jury. Because of this abusive discretion, we respectfully request this court to reverse all the claims are similar in that, like, for example, on the defamation claim, defendants argued is no dispute. The defamatory statements were protected by conditional privilege, thus barring their claim. In finding for the defendants, the district court stated, and did this over and over again in the decision, the statements about Phillips were defamatory per se when they accused Phillips of criminal conduct. Were the falsity and malice are presumed, defendants have successfully rebutted the presumption by proving that they made the statements in good faith and only the proper parties. The defendants actually made a PowerPoint demonstration about what they did to my client and what they should do and sent that out to everybody and used that. And guess what? There was about seven things that they were supposed to do in every investigation. They didn't do it here. So am I right that you're and I thought this was in your brief, your argument about lack of good faith or malice necessary to create a dispute of fact on the defamation claim? Right. Is that it, it, it, one can infer malice because they could have investigated more? Now, did the, they could have investigated more. There's, I was going to get into it a little later, but there's electronic packaging scanning that they do with these things. Guess what? There may be more. I thought the Supreme Court in the Kennedy decision that you both cite specifically says that that isn't a showing of malice. Good point, Judge. Kennedy decision was a different ball of wax. Okay. It was a counterfeit dollar. The person reported the counterfeit dollar. The Supreme Court said, uh, the district court granted summary judgment. The district court, uh, Supreme Court reversed that and saying, wait a minute, this is just a dollar. You know, they reported the dollar. This is a matter of community interest. And so they reported to law enforcement. They didn't do anything else. That's not what happened here. They, they had a law enforcement officer come out there, they checked and it, you know, he testified that there was nothing missing. The people at, this is Bed Bath and Beyond and Victoria Secrets, which are under the L Brands umbrella. Okay. So they said there's nothing missing. There's nothing missing here. And so they refused to arrest him. And, and the other thing is what happened is the cartons that had been registered as delivered were actually there, but opened up in the truck, right? That's not disputed. The cartons were delivered. Okay. What it is, and let's see, what is it? If you look at RE 35, there's a picture of how they packed these trucks to warehouse. It's a 26 foot box truck. They put all the boxes in and, you know, these are minimum wage employees. They always put them in wrong. They got the labels wrong way. He gets up, he, he drops his truck off. He gives him the keys. They packed the truck at the warehouse. They packed it wrong as usual. And so there was six boxes or seven boxes that were left over. He gets to the end of his route. He's got six or seven boxes left. And so the investigators come up and they, they say, oh, you got six or seven boxes left. One of the guys opens the boxes, not him, opens the boxes. And what was his duty? His duty and the policy was when he's got the, he's at the end of his route, he brings him back to the warehouse. These guys jumped the gun and didn't follow him back to the warehouse or make a call. They said they couldn't follow him. If you can't follow a 26 foot box truck, you know, there's a problem. They, they didn't do video surveillance. They didn't, I, they couldn't produce the scan history to show all of this. They, they, they don't have it. They gave me a PowerPoint, not a PowerPoint, a Excel spreadsheet, but not the scan history on this. And the other thing is some of the boxes were, this company, these investigators, they used to salt boxes. They had so many problems at DICOM at the warehouse. They would salt boxes to catch people. They wouldn't give us any information on whether they had problems with this facility. So the point is the Kennedy case, I'm sorry, I do grudge, the Kennedy case was just about a dollar. And they said, look, they thought it was counterfeit. That's reasonable, acted in good faith. This thing is much more complicated. They didn't do a number of things that they should have done. They jumped the gun. The criminal charges were dismissed against the guy. And then they go to Baton Rouge afterwards and they say, okay, look, we're going to give you a list of things. The cop says, give me a list of things. They can't come up with a list of things. They can't even get straight what was stolen or the value of the stolen. And the other thing is these stores had what they call shrinkage. They were losing stuff. They didn't investigate any of the people. And about whether he took the properly gave the packages back or not, they had video cameras in the store. They have to in all their stores. They had video cameras in the warehouse. They have to. Did they look at any of that? No. They did not. They didn't do that. And that would be other evidence that he didn't do it. They didn't even look at the warehouse at all. They didn't even look at the warehouse at all. And then my guy gets fired. This was like a mom and pop company. He owned his own truck. He gets fired. He loses everything. Loses the truck. They tell this other guy, and there's an affidavit which the judge overlooked, Miss Mizzell, that you cannot hire him. You can't hire him. He's got businesses. And so he doesn't get hired. And that's Mr. Mizzell. And I forget, he's got a separate company. He tells that. Then there's a guy, David Pippins, this is really strange, too. When he's at the site, he gets a card. And Mr. Pippins, the deposition says, no, that's not my card and everything. I wasn't out there. These guys give him David Pippin's card who says lost manager of DICOM. Then at the end of the day, they call the office. The manager says, give the boxes to the two investigators and come on back. So he does. And then he's terminated. But the warehouse is known. They had an incident where they stole, Mr. Mizzell's had a whole box truck stolen and everything by one of the employees. And like I said, they had salted in their list of everything they should do. And they don't say in a PowerPoint, hey, they exonerated this guy. They don't do that. But we've got a list of everything they should have done and how they were in bad faith. They didn't check the shrinkage in the store. They didn't check whether any of the store people were doing anything. The losses weren't reported or missing. Progress wasn't reported. This is interesting and everything. The scan documents, he's supposed to scan these, supposed to be in the store. They accused him. He didn't scan them in the store. Well, let's look at the videotape and see if he left the scanner in the store. He's supposed to leave the scanner in the store. They didn't contact Talbot and Hertz, who say they did 100% job, 100% job. They didn't contact any other Victoria's Secret or Bath and Body Works stores to confirm whether they had merchandise missing. The store in question on the day of the incident wasn't missing any product as confirmed by the law enforcement agency, and that's in the record at 1004. Defendants made no efforts to investigate the possibility that an employee in Bed Bath and Beyond or Victoria's Secrets could be the one responsible for any theft. That's in the record 1161. Defendants never questioned the store manager to inquire if Mr. Phillips left with the scanner, nor did they check the video surveillance footage to see if Phillips removed the scanner, ROA 1162. Defendants didn't even check the Dicom Warehouse or their store video to see how the thing was packed, to check with the people that packed it or look at the video, see if he did anything wrong, which would either prove or disprove their accusations of theft against Mr. Phillips, and that's in the record at 1145 to 46. The cartons under truck were not cross-referenced with the bills of lading, which would state the initial weight of the carton to determine if the cartons were tampered with, which is something that Tobin and Duffy said they would do, which is in the record at 1147. And then they had the gall to do a PowerPoint demonstration about what a great investigation they did in going after Mr. Phillips, but they didn't do the above in this case, although in the PowerPoint they said they were going to do all these things to get these guys and follow them and do video surveillance. Phillips went so far to have constant contact with the Baton Rouge Police Department, promised them a list of what was stolen. Pretty simple, right? Never gave it to the police. They went so far as to tell prospective employees outside of L Brands, Mr. Mazzel, and you got an affidavit in the record, which the judge disregarded, who had a company, rest assured delivery, that Mr. Phillips, you know, was a thief and he was unemployable and he couldn't be, if he wanted a contract with the company, he couldn't get a contract if he had Mr. Phillips in the truck. The court did not consider or credit any of this information, only relied on the word of the defendant appellees, which constitutes a credibility determination and a determination of material fact at issue. If you read the decision, the judge is saying, you know, he's making credibility determinations. You're not supposed to do that. You're not supposed to do that. The, let's see something. The, let's see something. The court neglects the fact, this is the other amazing thing too. We know there was, the boxes are packed, so they go to each store. According to Duffy and Talbot, they had mixed goods. They had Victoria's Secret goods in the same box with the other goods. And then one of the officers, not officers, Talbot, Talbot I believe, opened the box. Then they take pictures. They can't even get the picture straight. They got five boxes in the pictures in the record. Then they say, no, in deposition there's seven boxes missing. You know, the, the, the goods, they don't, he doesn't pack the boxes. Those are packed there. And they're labeled there. And it's clear that there was a flaw in the scanning and they were called duplicate labels, which is not uncommon according to even their investigators. They, the district court relied solely on A.D. and Duffy and Sean Talbot's recently created argument too, that there were social media posts. This comes up four years later, okay, into the case, social media posts. So, so that he was selling the stuff or implying that. But in deposition, they both admit they don't know who runs these things. You know, who could run these ads or who was responsible for this. They, they never investigated the which can readily be seen on a platform. And that's in the record at 1145, 1148, 1165. There's no evidence whatsoever that the Facebook posts could be attributed to Mr. Phillips. The, but then again, the district court weighed evidence in favor of the defamant. Defendants made a factual determination that Phillips was involved in the theft and the defendants were right in assuming he could be, which is a contested issue, a material fact. The judge in his decision doesn't even mention any of my evidence, doesn't even mention any of my affidavit. So why that's not true. And I think they missed totally the scanning issue and the duplicate labels and the lack of procedures that they followed that's in the record. The, it's for the juror to determine whether defendants acted reasonably or with malice and reckless disregard. And this is a lot different than the Kennedy case where you just got a dollar. Somebody says, I think it's counterfeit. And this, when you got to check seven or eight things and there's this technology involved. There's plenty of evidence here. If you look at what the plaintiff put on, that the defendants acted unreasonably with malice and reckless disregard. And really they falsified some of the evidence, like the pictures. They didn't take the pictures of all the boxes. They opened the boxes. It's, they didn't go look at the warehouse. So they don't want to tell us about what was going on in the warehouse. Then they disseminated written materials outlining how they continued to investigate Mr. Phillips. His family members also employed as delivery drivers. Your time's expired. You get to say something. Oh, I'm sorry. Thank you so much. Good morning. Please the court. My name is Andrew Smith. With me is my co-counsel, Oliver Frye, and in-house counsel for L Brands, Robert Stalter. A long time ago in a courthouse in a colony then of the state of New York, what became the state of New York, a future president, John Adams, admonished a trier of facts when he told that trier of facts that facts are stubborn things. And you have to look at the facts in evidence when analyzing what is an appropriate result based on those facts. It was such a good line that President Reagan used it almost 200 years later in addressing the nation. Facts are stubborn things. And the stubborn facts in this case that are actually in the record, actually in the record before the district court and before this court, absolutely compel the conclusion that the district court's affirmation of defendant's motion for summary judgment should also be affirmed by this court. I don't want to engage in a tit-for-tat analysis of some of the allegations made by opposing counsel at this lectern, but I do want to point out several obvious discrepancies. Number one, Bed Bath and Beyond is not in this case. The entity for which Mr. Phillips was delivering goods was Bath and Body Works. Bed Bath and Beyond is not affiliated with L Brands. Another issue that needs to be addressed here, I think, is the issue of the alleged video surveillance. There's no evidence that video surveillance even existed in any of the stores or any of the parts of the warehouse that would be so accurate that it could hone in on a serial number written on a carton that would ascertain whether or not the carton was a duplicate or an original. And I don't want to go through in great detail what the facts of the case are. I don't want to labor that point before this court. However, there are some unassailable facts that this court needs to consider. Number one, Mr. Phillips did drive as an independent contractor for DICOM in the spring of 2017. In the spring of 2017, objective evidence was provided to loss prevention investigators on behalf of L Brands, which noticed that inventory that had been marked as delivered to stores was in fact missing. This evidence suggested that there were problems in the delivery process. As a result of this evidence with the delivery process that was presented to these loss prevention investigators, they conducted an observation of Mr. Phillips. This was coupled with an observation of product being sold in its delivery containers online through Facebook and Instagram. These facts are in the record and they are unassailable. What is also unassailable is when they observed Mr. Phillips on the day in question in June of 2017. When they entered the truck, they saw six cartons. Those cartons had been shown, had scanned and delivered to the Mall of America earlier in the day. Mr. Phillips, also in the record, had no explanation as to why the scan showed that they had been delivered when they were now found on the truck. Mr. Tolbert did, in fact, cross-reference the electronic scan with the bill of lading. Mr. Duffy didn't, but Mr. Tolbert did. Upon observing this, observing the cartons in the truck, Mr. Tolbert called DICOM and spoke with Brad Hamilton, asked him, can you explain why these cartons are in the truck? Mr. Hamilton could not, also in the record. Pursuant to his required job responsibilities, he also notified police. They reported their findings to police. All of that took place in June. There was only one more set of communications and that was the next day, June 27, when Mr. Tolbert and Mr. Duffy had follow-up conversation with representatives from DICOM and spoke with the detective from the East Baton Rouge Police Department. That's the entire record of communication in this case. But you would agree that's reporting a crime? I would agree with that. I thought in your brief you were implying that their investigation, their communications, didn't even trigger. I would agree that what they reported was the result of the investigation that they undertook, but I would also, for the sake of argument, say that that's not necessarily saying this man is a criminal. They reported the results of their investigation. Therefore, that would be defamatory, per se, unless you've got a case that says it's not. I think certainly the implication would be that this man stole this product, for sure. That checks into the qualified privilege, the conditional privilege which exists. But I would also say this about the investigation and the scope of the investigation. This was addressed in a very thorough opinion written by Justice Wymer in the Kennedy case. In that case, this is what Justice Wymer said about investigations. Quote, a failure to investigate does not present a jury question on whether a statement was published with reckless disregard for the truth. So really the question in this case is, was the result of this painstaking investigation undertaken by Messrs. Tolbert and Duffy done in reckless disregard of the truth? And clearly the answer to that is no. They reported their findings based on a series of observations and a series of events that they accurately relayed to business, someone within a business privilege, and someone within law enforcement. And I would just ask the Court to is ongoing. If I'm standing in my kitchen window and I see someone looking at my garage with a flashlight and they're bending down and they're trying to look at something that's in my garage, I can reasonably believe that they're trying to break into my garage. They may be trying to steal something that's in my garage. So I call the police and I report this criminal activity to the police. And the police come and they arrest this person with the flashlight. Turns out the person's looking for his lost dog. Does that make me liable for defamation? The Kennedy Court addressed that clearly and said no, because I've made this report based on my observation, made in good faith, and that should absolutely throw a blanket of immunity over me from being subjected to claims for defamation. That's exactly what the Kennedy Court did. That's exactly the case here. So the one thing I do want to address, I think it needs to be addressed, the conditional privilege applies in law enforcement. That is clear. But the conditional privilege of good faith reports of suspected activity also falls within the business relationship. And that was addressed in the Eastern District Court case of Louisiana called Maggio versus Listek Jewelry, a case which was never appealed and which has been upheld. So the defamation claim fails because the conditional privilege exists. Defendants did not act with reckless disregard for the truth. And there's been no evidence presented, no evidence presented. The argument is just that they rushed. You're saying Kennedy covers that. What about the allegation that your clients actually called family members? They didn't go to the police, they didn't just go to the police and the businesses, they actually started calling others to slur him. There's no evidence in the record, Your Honor, that they actually called family members. What the evidence is, is that Mr. Tolbert created notes, prep notes, not unlike the prep notes I made for presenting this case to you today of an investigation outline, things that could be done. But I don't mean to cut you off. Your answer is there's no evidence of that. There's no evidence. The evidence is clear that he never did in fact contact family members. The only evidence related to family members are in Mr. Tolbert's prep notes. That's it. So we turn to the malicious prosecution case. Again, the conditional privilege applies. But even more importantly in the malicious prosecution case is the intervening acts of the police department in pursuing a warrant, the intervening act of a judge granting a warrant, the intervening act later of the arresting officer acting on the warrant, and ultimately the intervening act of a district attorney deciding not to pursue criminal charges. So we have the conditional privilege. We have the intervening acts. As Judge Ash pointed out in the district court, the plaintiff was never prosecuted. So it's a little difficult to jump to the conclusion that there's a malicious prosecution case with no prosecution. In terms of the negligent infliction of emotional distress case that exists in this case, again, we have the conditional privilege. But we also have that stubborn fact that this plaintiff was never diagnosed with any mental or emotional issues. He was never diagnosed with mental or emotional issues, and he never sought treatment for mental or emotional issues. The last two claims in the district court, which were not argued on appeal to this court, were the claims of false arrest and intentional infliction of emotional distress. As this court has noted in the Crose v. Umana case, if a plaintiff fails to brief an issue in their opening brief, it is as a matter of law waived and abandoned by the plaintiff. So because we have the appearance of the proof of the reckless disregard standard articulated by the Kennedy court, we believe that the district court's decision should be affirmed in its entirety. I'm happy to answer any questions, but if not, I will yield my time to the court. I apologize for the confusing bed, bath, and bodily works with the other, bed, bath, and beyond and everything, but it was L Brands, two L Brands stores, Victoria's Secret and the other one. They violated their own standards. They violated their own rules. You can look, it's in the record on RE 37, a list of how to investigate these claims. They didn't do it, and it's in their PowerPoint. The other thing is about the video, they didn't check. Video was there. Why do we know that? Because in the record, they have standards for facilities that want to do business with L Brands, and they require video in the warehouse, which they had here, and they require video in the stores so that they can deal with problems of theft and shrinkage by employees and others. They were in bad faith because they didn't follow their own policies. They didn't follow their own policies, and they gave misleading information and incomplete information to law enforcement. Law enforcement in Walker said, there's nothing missing. Nobody's complaining about anything missing. There's no case here. You could go to Baton Rouge. He makes several phone calls and visits Baton Rouge, either Duffy, or I think it was Duffy, Eddie and Duffy, and the officer says, give me a list of what's missing. Never does it. Never does it. That's in the record. The items, there's an issue, you know, about the packages. If you look at that exhibit, that picture of the truck, I think it's 35 in the record, how they packed the truck, you can see what happened here. They packed it in the wrong order. He puts all the stuff, he scans it, beep, beep, beep, everything looks okay. They got pictures in the big carts that he's delivering it to the store. The people in the store sign off on it. Yeah, everything's here, okay, and then, you know, so he thinks he's delivered everything, but he's got these packages. He says, no big deal. I'll just do like I'm supposed to do. I'll bring them back to the store, you know, bring back to the warehouse, and they'll be sent out wherever they're supposed to get sent out. These guys wanted to make a bust, jumped the gun, didn't wait for him to finish, didn't wait for him to go back to the warehouse, and then accuse him of these boxes, having these boxes, and something's wrong because the boxes were mixed up with goods from the two stores. It makes no sense. I don't know whether they were trying to salt the boxes or whatever, but they do this all the time. That's in the record, but we asked for information about the salting and asked Tobit, what about the warehouse? Did you check the warehouse? He didn't check that. He didn't check the warehouse, didn't check the store, and it's like that old Wendy's commercial, you know, with the lady, where's the beef? Where's the scans for him for that day? Where? They don't have them, and they make up an Excel spreadsheet to say that this guy's guilty and ruined his life. On mental anguish or distress, say he didn't go to a psychiatrist, there's a jury instruction I use in every case, the circuit jury instructions, that that's for the jury to decide what mental anguish this man went through, and you can't, you know, they decide. We don't have a computer doing it. They decide based upon their experiences. This is a very important case in that they came up with a program that submitted it, and it's going to happen to other people in the community unless you tell them this is wrong. If you're going to use this high-tech stuff, then do it right. Make it fair. Don't ruin people's lives, and don't give insufficient information and do an insufficient investigation, and then file criminal charges against people which are dismissed. Thank you. Thank you.